IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

N.M. and H.M.,                          )
                                        )
    Plaintiffs,                     )
                                        )
v.                                      )     Case No. 2:22-cv-442-RAH
                                        )           [WO]
NANCY BUCKNER, *et al.*,                 )
                                        )
    Defendants.                     )

## <u>MEMORANDUM OPINION and ORDER</u>

This is yet another lawsuit concerning the Alabama Department of Human Resources' (ADHR) Central Registry. Like others before them, Plaintiffs N.M. and H.M.[1] claim that the Defendants Nancy Buckner and Kim Mashego have violated their procedural due process rights by designating them as "*indicated*" for child abuse and neglect on the ADHR's central registry without affording them an opportunity for a hearing or the ability to contest the designation. The Complaint, as amended, is nearly identical to many others that previously have appeared before this Court. And like with other cases involving almost identical allegations, the Defendants have moved to dismiss. This motion is due to be granted in part and denied in part.

---

[1] At present, the Plaintiffs are preceding under their initials, and the Court will, for the present moment, allow them to continue to proceed in that format.

## I.      JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367. Personal jurisdiction and venue are not contested.

## II.      STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard.  *Twombly*, 550 U.S. at 555, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

## III.   BACKGROUND

### A. ADHR and the Central Registry

The ADHR is the state agency in Alabama responsible for investigation of most reports of suspected child abuse and neglect. Ala. Code § 26-14-6.1(3) (1975). Pursuant to its statutory authority, the ADHR has issued regulations and procedures for investigation and disposition of child abuse reports and for review, recording, and disclosure of the outcomes of child abuse investigations. *Id.* § 26-14-12 (1975); Ala. Admin. Code r. 660-5-34-.01, *et seq*.

"Once a report of suspected child abuse/neglect has been received, it must be investigated." Ala. Admin. Code r. 660-5-34-.04(4). Upon receipt of a report of child abuse or neglect, the state or county department of human resources promptly begins an investigation, which includes home visits and interviews with the child and custodial parents. Ala. Code § 26-14-7 (1975); Ala. Admin. Code r. 660-5-34-.05. After completing the investigation, the investigating social worker reaches a disposition as to whether the child experienced abuse or neglect and also identifies the person responsible for the abuse or neglect. Ala. Admin. Code r. 660-5-34-.07.

The worker assigns one of three dispositions: (1) "*Indicated*," which means

that "a preponderance of the credible evidence and the professional judgment of the worker indicate that abuse/neglect has occurred;" (2) *Unable to Complete*;" or (3) "*Not Indicated*," which means that "a preponderance of the credible evidence and professional judgment does <u>not</u> substantiate that abuse/neglect has occurred." *Id.*; *see also* Ala. Code (1975) § 26-14-8(a) (defining "indicated" and "not indicated"). The county department of human resources submits a complete written report of its investigation and disposition to the ADHR's statewide "Central Registry." Ala. Code § 26-14-7(d), 26-14-8 (1975); Ala. Admin. Code r. 660-5-34-.09.

All persons who have been assigned an "indicated" disposition are given an opportunity to disagree with the ADHR's findings "through either a CA/N hearing or an administrative record review." Ala. Admin. Code r. 660-5-34-.08(1)–(4). A CA/N hearing is "an internal investigatory hearing that is fact finding in nature and designed to elicit the facts in an atmosphere that allows the person accused of the abuse/neglect to contest the evidence presented against him [or her]." Ala. Admin. Code r. 660-5-34-.08(6); *see also* Ala. Code § 26-14-7.1 (1975) (providing due process rights for certain persons such as educators who have come under ADHR investigation for child abuse or neglect). The ADHR bears the burden of persuasion at the CA/N hearing. Ala. Admin. Code r. 660-5-34-.08(6)(c).

Unlike a CA/N hearing, an administrative record review is limited to consideration of whether the ADHR's own administrative record "contains

sufficient documentation based on a preponderance of credible evidence to support the 'indicated' disposition of child abuse/neglect." *Id.* r. 660-5-34-.08(3). "Administrative record reviews are conducted by [ADHR] staff who are not involved with the case." *Id.* r. 660-5-34-.08(7).  An administrative record review does not allow the accused to be presented with the evidence against him or her, or to contest the "indicated" listing by presenting his or her own rebuttal evidence or argument. *See id.* r. 660-5-34-.08(3), (7).  "The [administrative record] reviewers have the authority to overturn the dispositional finding of the worker and supervisor, *and their decision is final.*" *Id.* r. 660-5-34-.08(7) (emphasis added).

Because of the nature of their employment, certain individuals, such as educators, can obtain a CA/N hearing. *Id.* r. 660-5-34-.08(2).  All other individuals can only dispute an indicated disposition through an administrative record review. *Id.* r. 660-5-34-.08(3).

The accused individual is afforded ten working days from receipt of the notice of an indicated disposition to submit a written request for either a CA/N hearing or an administrative record review, whichever of the two is available to that individual. Ala. Admin. Code r. 660-5-34-.08(4).  If the ADHR receives no written request for review by the end of the ten-day period, the accused individual is considered to have waived review, and the "indicated" disposition is entered on the Central Registry. *Id.*  Similarly, if the indicated disposition is affirmed by the CA/N or administrative

review panel, it is entered on the Central Registry.  *See generally id.* r. 660-5-34-.08–.09.

Once an "indicated" disposition is entered on the Central Registry, it is confidential, but it may be released under certain circumstances to employers, prospective employers, and licensing and certifying agencies, among others as designated by law.  Ala. Code § 26-14-8; Ala. Admin. Code r. 660-5-34-.08(4), 660-5-34-.09.

Limited procedures are available for expungement from the Central Registry of "not indicated" and (in narrower circumstances) "indicated" listings.  Ala. Code § 26-14-8(e) (1975) (providing for expungement of "not indicated" listings upon request if, after five years after placing the listing on the Central Registry, the ADHR has received no further reports of child abuse or neglect); Ala. Admin. Code r. 660-5-34-.09(5)(i)–(j) (procedures for expungement of "indicated" and "not indicated" listings); *see also* Ala. Code § 26-14-3(e) (1975) ("[I]f any agency or authority investigates any report pursuant to this section [pertaining to reports by mandatory reporters] and the report does not result in a conviction, the agency or authority shall expunge any record of the information or report and any data developed from the record.").

**B. The Plaintiffs**

Sometime before September 29, 2020, N.M. was arrested and charged with domestic violence after allegedly slapping his minor child in the face and causing bruising to the child's mouth and ear. (Doc. 15 at 6.) The Shelby County Department of Human Resources (SCDHR) investigated the incident and concluded that there was credible evidence that physical abuse had occurred. (*Id*.) The SCDHR then closed its investigation with an *indicated* designation for child abuse. (*Id*.) An administrative record review was conducted, after which the *indicated* designation was affirmed. (*Id*. at 8.) N.M. additionally asked for a hearing, but the hearing request was ignored. (*Id*.) As it stands, N.M.'s name has been reported to ADHR's Central Registry with an indicated status for child abuse or neglect. (*Id*.)

Simultaneously, H.M., N.M.'s wife, was also investigated by the SCDHR. It concluded that H.M. had allowed N.M. to stay in the family home despite previously agreeing not to allow him to reside there. (*Id*. at 7.) Accordingly, the SCDHR concluded that H.M. had acted in an abusive and neglectful manner in failing to act in a protective manner when she allowed N.M. back into the home. (*Id*.) Thereafter, SCDHR closed its investigation with an *indicated* designation. (*Id*.) An administrative record review was conducted, after which the *indicated* designation was affirmed. (*Id*. at 8.) H.M. additionally asked for a hearing, but like N.M.'s

request, the hearing request was ignored.  (*Id.*)  As it stands, H.M.'s name has been

reported to the Central Registry with an indicated status.  (*Id.*)

The Plaintiffs state that, because of their *indicated* designation on the Central

Registry, their information on the Central Registry "will likely be released to

prospective employers or to their children's schools or other organizations

conducting extra-curricular children's activities at which they wish to volunteer."

(*Id.* at 10.)  They also allege that this potential disclosure means "they are or

imminently will be deprived opportunities to engage in activities and pursuits

available to other citizens, such as employment, volunteering, and being involved in

their child's educational and extra-curricular activities."  (*Id.*)  They plead that there

are no procedures under state law by which they challenge the validity of this

designation.  (*Id.* at 9–10.)

The Plaintiffs then filed this lawsuit against Nancy Buckner, the

Commissioner of the ADHR, and Kim Mashego, the Director of the SCDHR,

asserting a federal claim under Section 1983 for injunctive and declaratory relief and

a state law claim for monetary damages for negligence and wantonness.  In its

simplest, the Plaintiffs claim their procedural due process rights have been violated

because their names have been listed on the Central Registry without a pre-

deprivation hearing.  They seek removal of their names from the registry until after

such time that they have been afforded an opportunity to deny, dispute, and controvert the child abuse allegations.

## IV.   DISCUSSION

### A. The Section 1983 Claim – Procedural Due Process Violation

Count One of the Amended Complaint is a procedural due process claim against Buckner and Mashego in their official capacities for "unlawful actions and conduct and [] deliberate indifference" because Buckner and Mashego have established and maintained a custom, practice, or policy that has resulted in the denial of requests for hearings before placement of their indicated dispositions on the Central Registry.  (Doc. 15 at 11.)  They seek declaratory and injunctive relief directing Buckner and Mashego to "expunge, purge, and remove from the statewide Central Registry all reports, names, information and data of any type relating to the [Plaintiffs]," and they also seek "declaratory injunctive relief directing that [Buckner and Mashego] cannot list [the Plaintiffs'] names and information on the Central Registry until such time as all due process rights and remedies available to deny, dispute and controvert the report, allegations and the disposition have been exhausted."  (Doc. 15 at 14–15.)

To state a Section 1983 claim for the denial of procedural due process, a plaintiff must allege "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *J.R.*

*v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013) (citation omitted).  A claim for denial of procedural due process is actionable under Section 1983 "only when the state refuses to provide a process sufficient to remedy the procedural deprivation." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).  "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (citations omitted). Thus, "the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." *Maddox v. Stephens*, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013) (citations omitted).

Buckner and Mashego move to dismiss this count, arguing lack of Article III standing and the Plaintiffs' failure to plead the deprivation of a constitutionally protected liberty interest.

### 1. Standing

Buckner and Mashego first argue the Plaintiffs have not suffered a concrete and particularized injury in fact because the Plaintiffs only allege that information about their indicated status *could* be released and that there is *potential* for disclosure, and therefore the Plaintiffs lack Article III standing. In other words, they argue that the Plaintiffs lack standing to seek declaratory and injunctive relief to challenge their *indicated* dispositions because the Plaintiffs face no definite threat of

future injury.

To meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he [or she] will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). Because prospective relief regulates future conduct, a party establishes an injury in fact for standing purposes "if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

The Plaintiffs have asserted facts from which it could reasonably be inferred that they face a real, concrete threat of future injury.  They are the subjects of *indicated* dispositions that are *currently* listed on the Central Registry.  Per their allegations, they have been and continue to be deprived of a due process hearing to challenge those *indicated* dispositions.  Aside from the administrative record review process, there are no procedures under Alabama law by which non-educators like the Plaintiffs could ever challenge the validity of an *indicated* disposition.  Except for the opportunity for an administrative record review, which has already passed and which the Plaintiffs contend is constitutionally insufficient, it is already a legal certainty that Alabama law and ADHR regulations and policies afford the Plaintiffs no opportunity to challenge the validity of their *indicated* statuses.

Further, the Plaintiffs allege that their *indicated* statuses will likely be released to prospective employers or to their children's schools and other organizations conducting extracurricular children's activities at which they wish to volunteer. They also allege that they are or imminently will be deprived opportunities to engage in activities and pursuits available to other citizens, such as employment, volunteering, and involvement in their and other children's educational and extracurricular activities.  Therefore, the Plaintiffs seek prospective relief to prevent future injury to their constitutionally protected liberty interests, which include "the right of the individual to contract, to engage in any of the common occupations of life [. . .] to establish a home and bring up children, [. . .] and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  Accordingly, with respect to claims for prospective relief from their *indicated* status, the Plaintiffs have sufficiently pleaded facts showing that they face a real, immediate, concrete threat of injury; that the threatened injury is fairly traceable to Buckner and Mashego's failure to provide them with a sufficient opportunity to contest their *indicated* status; and that declaratory and injunctive relief are capable of relieving the injury.

Indeed, the factual allegations made by the Plaintiffs are virtually identical to those made by other persons whose names have been placed on the Central Registry where this Court has concluded that Article III standing exists.  *See, e.g., Byrd v.*

12

*Buckner*, No. 2:18-cv-122-RAH-SRW, 2020 WL 2046375 (M.D. Ala. Apr. 28, 2020); *Collier v. Buckner,* 303 F. Supp. 3d 1232 (M.D. Ala. 2018); *Thomas v. Buckner,* No. 2:11-cv-245-WKW, 2012 WL 3978671 (M.D. Ala. Sept. 11, 2012). The Court sees no reasons to digress from the holdings in *Thomas*, *Collier* and *Byrd*, at least at the present stage. Therefore, the Plaintiffs have constitutional standing to seek prospective relief from the denial of a hearing to challenge their *indicated* statuses.[2]  Furthermore, from an Article III standpoint, those claims are ripe for review.[3]

### 2.  Liberty Interest

The Plaintiffs allege that the placement of their names with *indicated* dispositions on the Central Registry without the benefit of an administrative hearing results in the deprivation of a constitutionally protected liberty interest and satisfies the "stigma-plus" test of *Paul v. Davis*, 424 U.S. 693 (1976).  Under the "stigma-

---

[2] Because Buckner and Mashego only challenge the applicability of the *Ex Parte Young* exception to Eleventh Amendment immunity on standing grounds, and because the Court concludes that the Plaintiffs have standing to bring a claim for prospective injunctive relief, the Court will not otherwise address whether the *Ex Parte Young* exception applies to this matter and concludes that this claim may proceed under the *Ex Parte Young* exception to Eleventh Amendment immunity. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–37 (11th Cir. 1999).

[3] As the parties do not raise or address a prudential standing issue, the Court does not address it. In any event, prudential ripeness exists here.  *See Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) ("In deciding whether a claim is ripe for adjudication or review, we look primarily at two considerations: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration.").

plus" test, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Behrens v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005) (citation omitted).   To satisfy the "stigma-plus" test, "the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296–97 (11th Cir. 2003) (citation omitted); *see also Cypress Ins. Co. v. Clark,* 144 F.3d 1435, 1436 (11th Cir. 1998) (the "stigma-plus" test "requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation").

Buckner and Mashego argue the Amended Complaint fails to assert a deprivation of a constitutionally protected liberty interest because the Plaintiffs do not allege that their information has in fact been publicly disclosed, since the Central Registry is confidential and not publicly available, and no allegation has been made that there has been any disclosure to third parties.  Buckner and Mashego also argue that the Plaintiffs have failed to plead or show a tangible injury sufficient to meet their burden under the "stigma-plus" test.

It is true that the Plaintiffs do not allege that any known third-party has

accessed the Central Registry and viewed their *indicated* status, but they do allege that their indicated status has been placed (or published) on the Central Registry where it is available to be seen by those third-parties who are permitted by regulation to view that information.   But such an assertion is not required here, since the Plaintiffs seek declaratory and injunctive relief with the purpose and intent to prevent *future* harm.   *See Adler v. Duval Cnty. Sch. Bd*., 112 F.3d 1475, 1477 (11th Cir. 1997) ("Equitable relief is a prospective remedy, intended to prevent future injuries.").   This same argument was rejected by the *Collier* court upon almost identical facts.   *See* 303 F. Supp. 3d at 1251–55, 1265–67 (focusing on the potential threat of harm faced by plaintiffs due to their indicated status as published on the Central Registry).   The Court finds the *Collier* reasoning persuasive and equally applicable here.

To be sure, an indicated disposition for and allegation of child abuse is stigmatizing.   *See Siegelman,* 322 F.3d at 1296.   However, stigma alone is not sufficient to establish a constitutional deprivation of a protected liberty interest that warrants due process protections.   The Plaintiffs must also show that "a right or status previously recognized by state law was distinctly altered or extinguished" in connection with the stigma.   *See id*. at 1296–97.

And here, Buckner and Mashego argue, as they have in other cases, that the Plaintiffs have not alleged sufficient facts to meet the "plus" aspect of the stigma-

plus test.  They contend that the Plaintiffs have not suffered a tangible deprivation because they have not alleged that they have been discharged, demoted, or rejected from a job due to information on the Central Registry, that they have lost custody of their children, or that they have lost any state-provided licenses.  Buckner and Mashego argue that the Plaintiffs merely allege speculative fears or concerns that may arise from being listed on the Central Registry.

Contrary to the Defendants' assertions, the Plaintiffs have sufficiently alleged *distinct alterations* of their rights, not simply fears and concerns that their rights may be lost.  For example, the Plaintiffs' right to family integrity have been distinctly altered by their inclusion on the Central Registry as child abusers.  They allege that they intend to be active in their children's lives and will volunteer with and participate in public and private institutions that provide academic, educational, athletic, social, civil, sports-related, and other services for minor children including their own. (Doc. 15 at 9.)  They further allege that their listing will likely be released to prospective employers or to their children's schools or other organizations conducting extra-curricular children's activities at which they wish to volunteer. (*Id.* at 10.)  Their rights to family integrity are distinctly altered because it is more difficult for them to participate in their children's lives, especially in today's society where it is common practice for schools and organizations catering to children to require background checks (even if not statutorily required).  *See Collier*, 303 F.

16

Supp. 3d at 1266; *Thomas*, 2012 WL 3978671, at *5–8.   Having *indicated*
dispositions on the Central Registry makes it highly unlikely that the Plaintiffs will
be permitted to volunteer and participate to the fullest measure contemplated by this
nation's notions of liberty and family integrity.

The Plaintiffs do not simply claim that they have a liberty interest in not being
labeled as child abusers.   They allege much more.   They are adults and more
importantly, parents. They are presently engaging in parenting and working.   The
stigma associated with being labeled as a child abuser affects the Plaintiffs' right to
establish a home and bring up children and the right to family integrity, all of which
are well-established liberty interests worthy of the constitutional protection of
procedural due process.  *See Meyer*, 262 U.S. at 399; *Washington v. Glucksberg*, 521
U.S. 702, 720 (1997);  *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

The Plaintiffs have sufficiently satisfied the stigma-plus test, at least with
respect to the right of family integrity.   Accordingly, the motion to dismiss is due to
be denied to the extent the Defendants assert the Plaintiffs' inability to satisfy that
test.

### 3.  Exhaustion

Buckner and Mashego also seek dismissal of the due process claim for the
additional reason that the Plaintiffs cannot show that there are constitutionally
inadequate state procedures and that the Plaintiffs have failed to take advantage of

the state procedures that do exist.

As the Plaintiffs note, they do not fall into the category of persons who are entitled to a CA/N hearing.  They allege that Buckner and Mashego, pursuant to their statutory authority, established a custom or policy in which only administrative record reviews are given and all CA/N hearings are denied.  The administrative review is just that, a review of the record created by the social worker, and, according to the Amended Complaint, this record was established without input from the Plaintiffs.  Upon that decision being made, the Plaintiffs have had no other procedure by which to remove their names from the Central Registry.

Furthermore, the Plaintiffs did take advantage of the extremely limited procedures available to them, as the Amended Complaint reflects that an administrative review was performed.  They requested a hearing, but were only given an administrative record review, and received no response regarding their request for a hearing.  These allegations are sufficient to plausibly show *at this stage* that the procedures are constitutionally inadequate.  Thus, the Defendants are not entitled to dismissal on this basis.[4]

---

[4] This should not be construed as this Court's finding that the administrative record review process is constitutionally inadequate in this particular case, as Judge Watkins did in *Collier* and *Thomas*. It appears that, at the point he ruled in both cases, the parties failed to thoroughly address, if they did at all, the issue of whether the plaintiffs could challenge their *indicated* dispositions after an administrative record review through an appeal under the Alabama Administrative Procedure Act or a common law writ of certiorari or mandamus filed in the Circuit Court of Montgomery County, Alabama. The Court expects the parties to *thoroughly* address that issue in subsequent motion practice in this case.

Finally, Buckner and Mashego argue that the Plaintiffs failed to take advantage of the available state procedures to remedy their alleged injury—by filing a suit in state court to compel the performance of a legal duty, to enjoin the enforcement of an unconstitutional law, or to compel the performance of a ministerial act, or by bringing a suit under the Declaratory Judgment Act. Accordingly, Buckner and Mashego assert that the Plaintiffs failed to exhaust their state remedies.  This argument ignores the heart of the Plaintiffs' claims.  Like the plaintiffs in *Thomas*, the Plaintiffs plead that Buckner and Mashego have established a system whereby the above-delineated administrative review is the only available remedy to address one's *indicated* status if one is not eligible for a CA/N hearing. 2012 WL 3978671 at *8.  Besides, Buckner and Mashego even concede that additional procedures may not even be available to the Plaintiffs at least under the Alabama Administrative Procedures Act if their case is not a "contested case." (Doc. 18 at 11 n.5; Doc. 31 at 10–11.)  Accordingly, and solely for purposes of the Defendants' motion to dismiss, the Defendants have not yet shown that Count One is due to be dismissed for failure to exhaust available state remedies.

### B.  **The State Law Negligence and Wantonness Claims (Count Two)**

Count Two is a state law claim for negligence and wantonness.[5]  In it, the Plaintiffs seek compensatory and punitive damages from Buckner and Mashego, in their individual capacities, for breach of alleged duties associated with their failure to withhold the Plaintiffs' names from the Central Registry until after they had been afforded a  hearing.  Buckner and Mashego move to dismiss this claim for lack of standing because there has been no injury in fact.

To establish standing in the context of Article III in an action for monetary damages, a plaintiff must allege an (1) injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged act; and (3) that it is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.[6]  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (holding that, to establish standing, plaintiffs must

---

[5] The Plaintiffs conceded to dismissal of paragraph 23 of their Amended Complaint (Doc. 15 at 15–16), which asserts that Buckner and Mashego failed and/or refused to transmit their request for a hearing to the ADHR Office of Administrative Hearings.  (Doc. 25 at 41–42.)

[6] Because Count Two of the Amended Complaint asserts a claim for monetary damages, rather than for prospective and injunctive relief, and therefore alleges past harm rather than the likelihood of future harm, the Court must conduct a separate standing analysis for the state law tort claim. *See JW ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) ("[A] 'plaintiff must demonstrate standing for each claim and for each form of relief that is sought.'" (citation omitted)).

show they have "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical").

The Plaintiffs seek monetary damages from Bucker and Mashego in their individual capacities on the grounds that they are responsible in various ways for the Plaintiffs' names being placed on the registry without affording them a hearing. The Plaintiffs allege no quantifiable concrete injuries at this point in time, aside from the fact that their names are listed on the Central Registry. In fact, other than a vague reference in the Amended Complaint to disclosure and dissemination, the Plaintiffs provide no specification or detail whatsoever as to the recipient, if anyone, of any negative information against them. And they do not allege that they have already suffered any compensable injury from the fact that their names are listed on the Central Registry or from the disclosure of their *indicated* dispositions to third parties.

The Plaintiffs' allegations are insufficient to satisfy their obligations to show standing for a monetary damage claim based upon state tort law theories. *See Collier*, 303 F.Supp.3d at 1250, 1275. Accordingly, the negligence and wantonness claim of the Plaintiffs against Buckner and Mashego in their individual capacities is due to be dismissed.[7]

---

[7] As the Court concludes that the Plaintiffs lack standing for the claims for negligence and wantonness, the Court pretermits discussion of Buckner's and Mashego's other grounds for dismissal, such as the nonexistence of a legal duty and state-agent immunity.

## V.  CONCLUSION

Accordingly, it is ORDERED as follows:

(1)     Defendants Nancy Buckner and Kim Mashego's Motion to Dismiss (Doc. 18) is GRANTED in part and DENIED in part.  It is DENIED as to the procedural due process claim against Defendants for prospective declaratory and injunctive relief in their official capacities (Count One).  It is GRANTED as to the negligence and wanton ness claim for monetary damages (Count Two).

(2)     Count Two is DISMISSED without prejudice.

**DONE** on this the 10th day of April, 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE